

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | CRIMINAL ACTION NO.: 0:23-186-MGL-1 |
| § | |
| ZYQUON DEANGELO HUDSON, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S AMENDED MOTION TO DISMISS**

## I.  INTRODUCTION

Pending before the Court is Defendant Zyquon DeAngelo Hudson's (Hudson) amended motion to dismiss the indictment in this case as unconstitutional under the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). Having considered the motion, the response, the record, and the applicable law, it is the judgment of the Court Hudson's motion will be denied.

## II.  PROCEDURAL HISTORY

A grand jury indicted Hudson of knowingly possessing a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).

Hudson subsequently filed this motion to dismiss, and the government responded. The Court, having been fully briefed on the relevant issues, determines oral argument is unnecessary and will now adjudicate the motion.

### III.     STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b), the Court should dismiss criminal charges in an indictment "where there is an infirmity of law in the prosecution[,]" such as an unconstitutional statute. *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)).

The Second Amendment to the United States Constitution provides "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *Bruen*, the Supreme Court explained the standard for assessing Second Amendment claims as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Hudson makes a facial challenge to 18 U.S.C. § 922(o) (Section 922(o)). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Indeed, "[t]he Supreme Court has instructed that facial challenges are 'disfavored' because they 'often rest on speculation,' 'short circuit the democratic process,' and 'run contrary to the fundamental principle of judicial restraint.'" *Bianchi v. Brown*, 111 F.4th 438, 452 (4th Cir. 2024) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008)).

IV.     **DISCUSSION AND ANALYSIS**

Hudson argues the conduct prohibited by Section 922(o) is both protected by the plain text of the Second Amendment and historically unregulated.  The government, however, contends the Second Amendment's protections fail to extend to machineguns, and the regulation of such weapons is consistent with the Nation's historical tradition.

The Court first takes a brief look at Second Amendment jurisprudence prior to *Bruen*.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized the Second Amendment protects the right of law-abiding citizens to possess a handgun in their home for lawful purposes, such as self-defense.  The majority recognized in dicta, however, "the right secured by the Second Amendment is not unlimited[.]"  *Id.* at 626.  In other words, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.*

After *Heller*, most circuit courts, including the Fourth Circuit, developed a two-part test for assessing Second Amendment claims.  *See, e.g.*, *Harley v. Wilkinson*, 988 F.3d 766 (4th Cir. 2021) (employing the now invalid two-part test described below), *abrogated by Bruen*, 597 U.S. at 19 n.4.  "At the first step, the government [could] justify its regulation by 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.'"  *Bruen*, 597 U.S. at 18 (second alteration in original) (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)).  "If the government c[ould] prove that the regulated conduct f[ell] beyond the Amendment's original scope," the circuit courts ended the analysis and concluded "the regulated activity [wa]s categorically unprotected."  *Id.*  (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)).  If the government failed to prove the regulated conduct fell beyond the Amendment's original scope, however, the circuit courts proceeded to step two and considered

3

"how close the law c[ame] to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (quoting *Kanter*, 919 F.3d at 441).

In *Bruen*, the Supreme Court held this approach was "one step too many" and instead set forth the standard this Court described above. *Id.* at 19. The Supreme Court recognized the first step of the predominant circuit court framework was "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* But, the Supreme Court determined *Heller* and its successor, *McDonald*, fail to support the second step. *Id.* Instead, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*; *see United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) ("[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition.").

Further informing this Court's analysis is a recent decision by the Fourth Circuit upholding as constitutional a state statute generally prohibiting "the sale and possession of certain military-style 'assault weapons,' including the AR-15, the AK-47, and the Barrett .50 caliber sniper rifle[.]" *Bianchi*, 111 F.4th at 441–42. Adhering to *Bruen*, the Fourth Circuit concluded "[t]he assault weapons at issue fall outside the ambit of protection offered by the Second Amendment because, in essence, they are military-style weapons designed for sustained combat operations that are ill-suited and disproportionate to the need for self-defense." *Id.* at 441. Moreover, the Fourth Circuit determined that, even if the Second Amendment encompassed the firearms at issue, the statute "fit[] comfortably within our nation's tradition of firearms regulation[,]" as yet "another example of a state regulating excessively dangerous weapons once their incompatibility with a lawful and

4

safe society becomes apparent, while nonetheless preserving avenues for armed self-defense." *Id.* at 441–42.

With the benefit of the Supreme Court's analyses in *Heller* and *Bruen* and the Fourth Circuit's analysis in *Bianchi*, this Court concludes Section 922(o) survives Hudson's constitutional challenge.

As per *Bruen*, the Court will first look to whether the plain text of the Second Amendment covers the conduct at issue. 597 U.S. at 24.

"[T]he Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Id.* at 47 (quoting *Heller*, 554 U.S. at 627). In other words, "'dangerous and unusual weapons' that are not 'in common use' can be prohibited." *Bianchi*, 111 F.4th at 445 (quoting *Heller*, 554 U.S. at 625, 627).

As the Fourth Circuit recently explained in *United States v. Price*, Supreme Court precedent indicates "machineguns are not in common use for a lawful purpose . . . ." 111 F.4th 392, 403 (4th Cir. 2024) (citing *Heller*, 554 U.S. at 629); *see id.* at 405 ("[T]he Supreme Court has directed us to determine whether a weapon's common purpose is a lawful one—such as self-defense—or one that would be unlawful for ordinary citizens to engage in—such as . . . waging war, as with machineguns."); *see also Heller*, 554 U.S. at 624 (explaining it would be "startling" to read *United States v. Miller*, 307 U.S. 174 (1939), as deeming unconstitutional the National Firearms Act's restriction on machineguns); *Bianchi*, 111 F.4th at 452 ("The Second Amendment, with its 'central component' of 'individual self-defense,' is not concerned with ensuring citizens have access to military-grade or gangster-style weapons." (citing *Bruen*, 597 U.S. at 29)).

Accordingly, machineguns "fall[] outside the ambit of the Second Amendment, and the government may regulate [them]." *Bianchi*, 111 F.4th at 446.

Because machineguns "are not within the scope of the constitutional right to keep and bear arms for self-defense," *Bianchi*, 111 F.4th at 446, the government need not "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation[,]" *Bruen*, 597 U.S. at 17.

For all the foregoing reasons, this Court is convinced the Supreme Court would conclude Section 922(o) fails to infringe on any Second Amendment rights.

## V.    CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Hudson's amended motion to dismiss, ECF No. 171, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 19th day of September 2024, in Columbia, South Carolina.

> s/ Mary Geiger Lewis
> MARY GEIGER LEWIS
> UNITED STATES DISTRICT JUDGE

6